## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

THERESA JAMES, as wrongful death estate
representative for Jay Murphy, Sr., deceased, and as
custodial parent and next friend of her daughter, M.,
a minor,

       Plaintiff,

vs.                                                                                        No. CIV 09-0540 JB/CG

MARTIN J. CHAVEZ, III, individually and in his
official capacity as Mayor of the City of
Albuquerque;

RAY SCHULTZ, individually and in his official
capacity as Chief of Police of the City of
Albuquerque;

RUSSELL CARTER, individually and in his official
capacity as an officer of the Albuquerque Police
Department "S.W.A.T. Team";

MICHAEL FOX, individually and in his official
capacity as an Officer (Detective) of the Albuquerque
Police Department;

CITY OF ALBUQUERQUE, as an Albuquerque
Police Department, a municipal entity organized
under the laws of the State of New Mexico and its law
enforcement agency; and

JOSH BROWN, an Officer of the Albuquerque Police
Department, individually.

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the City Defendants' Motion to Dismiss No.

I: Dismissal of Plaintiffs' Fourth Amendment Excessive Force Claims, Official Capacity Claims

Against the Individually Named Defendants, § 1983 Claims Against the Albuquerque Police

Department, and State Law Negligence Claims, filed August 16, 2011 (Doc. 102)("Motion to Dismiss"); and (ii) the City Defendants' Motion for Partial Summary Judgment No. III: Dismissal of Plaintiffs' Municipal Liability (Policies, Customs, Patterns, and Practices), Failure to Train, and Supervisory Liability Claims, filed August 16, 2011 (Doc. 105)("MSJ").  The Court held hearings on October 4, 2011 and October 28, 2011.  The primary issues are whether the Court should: (i) dismiss Plaintiff Theresa James' excessive force claims asserted under a Fourteenth Amendment theory against the Individually Named Defendants;[1] (ii) dismiss James' official capacity claims against the Individually Named Defendants; (iii) dismiss James' 42 U.S.C. § 1983 claims against the Defendant Albuquerque Police Department ("APD"); (iv) dismiss James' negligence claims against Defendant Russell Carter; (v) enter summary judgment on James' claims against Defendants Martin J. Chavez, Ray Schultz, and the City of Albuquerque (referred to as the "City Defendants"); and (vi) dismiss the remaining state law claims in this case without prejudice under 28 U.S.C. § 1367(c)(3).  Because James does not oppose the Court dismissing with prejudice the following claims, the Court will dismiss with prejudice James': (i) excessive force claims asserted under a Fourteenth Amendment theory against the Individually Named Defendants -- other than Defendant Russell Carter; (ii) official capacity claims against the Individually Named Defendants; and (iii) the 42 U.S.C. § 1983 claim against the APD.  Because the Court has already concluded that none of the Individually Named Defendants have committed any constitutional violations, the Court will enter summary judgment on James' remaining municipal policy claims against the City Defendants asserted under a supervisory liability theory -- Count I.  After entering summary judgment on and dismissing these federal claims, no federal claims remain in this case.  Consequently, the Court will

---

[1]The Individually Named Defendants include Defendants: (i) Martin J. Chavez, III; (ii) Ray Shultz; (iii) Russell Carter; (iv) Michael Fox; and (v) Josh Brown.

decline to exercise supplemental jurisdiction over the remaining state law claims and will dismiss the remaining state law claims without prejudice.

## PROCEDURAL BACKGROUND

On August 16, 2011, the City Defendants filed their Motion to Dismiss.  The City Defendants seek dismissal of James' following claims: (i) her excessive force claims asserted under a Fourteenth Amendment theory against the Individually Named Defendants; (ii) her official capacity claims against the Individually Named Defendants; (iii) her 42 U.S.C. § 1983 claims against the APD; and (iv) James' negligence claims.  See Motion to Dismiss at 4-15.  On September 12, 2011, James filed her Response to the Motion to Dismiss.  See Plaintiff's Response to Defendants' First Motion to Dismiss (Doc. No. 102) (Doc. 125)("Response to Motion to Dismiss"). In her Response, James stated that she concurs in the following: (i) "[d]ismissal of all Fourteenth Amendment substantive due process claims" other than "the Plaintiff's substantive due process claims against Defendant Carter"; (ii) "[d]ismissal of the official capacity claims against the individual Defendants, with the understanding that Plaintiff does not consent to dismissal of any of her municipal liability claims against the City of Albuquerque, nor to dismissal of her supervisory liability claims"; and (iii) "[d]ismissal of the claims against the 'Albuquerque Police Department', with the understanding that Plaintiff does not consent to dismissal of any of her municipal liability claims against the City of Albuquerque, nor to dismissal of her supervisory liability claims." Response to Motion to Dismiss at 1-2.  James opposed dismissal of her state law claims against Carter and dismissal of her municipal policy claims.  See Response to Motion to Dismiss at 2.

On August 16, 2011, the City Defendants filed their Motion for Summary Judgment.  In their Motion for Summary Judgment, they seek dismissal of James' municipal liability claims asserted against them under 42 U.S.C. § 1983.  See MSJ at 26.  They point to various policies that were in

place at the time of the incident which regulated the use of deadly force in an appropriate manner. See MSJ at 2-12. The City Defendants argue that there is no evidence showing that they established an official policy that resulted in a constitutional violation, followed an unwritten custom, or knew of a pattern or practice which caused the officers in this case to use excessive force. See MSJ at 15-20. They point out that, under 42 U.S.C. § 1983 municipal liability, the policy or custom must be the moving force behind the alleged deprivation of the plaintiff's constitutional rights. See MSJ at 15. They argue that applicable APD policy regarding the use of deadly force meets the constitutional standards set out for use of deadly force. See MSJ at 17-19. The City Defendants contend that there is no evidence establishing that they acted with deliberate indifference. See MSJ at 20-23.

On September 12, 2011, James filed her Plaintiff's Rule 56(d) Response to Defendants' Third Motion for Summary Judgment (Doc. No. 105). See Doc. 124 ("Response to MSJ"). James notes that she delivered her supplemental discovery request to the City Defendants on July 5, 2011. See Response to MSJ at 1. She states that these requests were to gather evidence regarding: (i) APD's custom regarding use of deadly force; (ii) APD's custom regarding warrantless entries into homes; (iii) the City of Albuquerque's actual or constructive notice "that its failure to change its customs regarding use of deadly force by APD was likely to result in incidents like the shooting death of Plaintiff's decedent, James Murphy, Sr.;" (iv) APD's failure "to respond to a known need to provide training regarding use of deadly force and warrantless entries;" and (v) APD "negligently fail[ing] to implement appropriate training changes in violation of the New Mexico Tort Claims Act." Response to MSJ at 1-2. James notes that the Defendants did not respond to, object to, or answer her supplemental discovery requests. See Response to MSJ at 2. James requested thirty days from the date on which the City Defendants respond to these discovery requests to respond to

the Motion for Summary Judgment.  <u>See</u> Response to MSJ at 2.  James P. Lyle, attorney for James, attached an affidavit as an exhibit to the Response to MSJ.  <u>See</u> Affidavit of James P. Lyle, filed September 12, 2011 (Doc. 124-1)("Lyle Aff.").  In the affidavit, Mr. Lyle, states that on July 15, 2011, his office manager personally delivered James' supplemental discovery requests to the City Defendants.  <u>See</u> Lyle Aff. ¶ 1, at 1.  Mr. Lyle reiterates the purpose of these discovery requests.  <u>See</u> Lyle Aff. ¶ 2, at 1-2.  Additionally, he states: "Without this information, Plaintiff cannot 'present facts essential to justify its opposition' to Defendants' third summary judgment motion."  Lyle Aff. ¶ 3, at 2 (citing Fed. R. Civ. P. 56(d)).

On September 19, 2011, the City Defendants filed their Reply to Response to City Defendants' Motion for Partial Summary Judgment No. III: Dismissal of Plaintiffs' Municipal Liability (Policies, Customs, Patterns, and Practices), Failure to Train, and Supervisory Liability Claims.  <u>See</u> Doc. 139 ("Reply to MSJ Response").  The City Defendants argue that James has failed to meet the requirements set out in rule 56(d) of the Federal Rules of Civil Procedure to justify her failure to respond to the Motion for Summary Judgment.  <u>See</u> Reply to MSJ Response at 2-5.  The City Defendants recognize that a Court may grant a continuance to enable a non-movant to properly respond to a motion for summary judgment.  <u>See</u> Reply to MSJ Response at 2.  The City Defendants contend that, to properly invoke rule 56(d), the non-movant must state with specificity how the desired time would enable it to meet its burden in opposing summary judgment.  <u>See</u> Reply to MSJ Response at 3.  The City Defendants argue that they never received James' supplemental discovery requests.  <u>See</u> Reply to MSJ Response at 3-4.  The City Defendants argue that James untimely filed a motion to compel production of their responses to these discovery requests.  <u>See</u> Reply to MSJ Response at 4.  The City Defendants note that James did not file her certificate of service for these discovery requests until roughly two months after James allegedly served them on the City

Defendants.  See Reply to MSJ Response at 5-6.  The City Defendants contend that James must explain how additional time will enable her to rebut their allegations that there are no genuine issues of material fact.  See Reply to MSJ Response at 8.

At the October 4, 2011 hearing, James reiterated that, other than the excessive force claims and the negligence claims against Carter, she did not oppose the Court dismissing with prejudice the claims against the individual Defendants.  See Transcript of Hearing at 3:15-21 (taken October 4, 2011)(Lyle)("Oct. 4, 2011 Tr.").[2]  James noted that the City Defendants provided her with the requested discovery regarding the municipal liability claims before the Court held the October 4, 2011 hearing.  See Oct. 4, 2011 Tr. at 3:22-4:12 (Lyle).  James stated that the discovery was voluminous and that she had not yet had time to go through all the materials.  See Oct. 4, 2011 Tr. at 4:4-12 (Lyle).  James stated that she was not yet sure whether she would choose to oppose the Motion for Summary Judgment.  See Oct. 4, 2011 Tr. at 4:4-12 (Lyle).  James noted that she was withdrawing her previous motion to compel production of discovery, as the parties had resolved that dispute.  See Oct. 4, 2011 Tr. at 4:13-19 (Lyle).  The City Defendants reiterated that James' rule 56(d) affidavit does not identify what specific facts the discovery she seeks could produce.  See Oct. 4, 2011 Tr. at 42:16-6 (Robles).  James noted that she may not oppose the Motion for Summary Judgment following a review of the discovery responses.  See Oct. 4, 2011 Tr. at 44:8-15 (Lyle).  James asked for thirty days to review the discovery material and then file a supplemental response.  See Oct. 4, 2011 Tr. at 45:1-8 (Lyle).

At the October 28, 2011 hearing, James informed the Court that she intended to oppose the Motion for Summary Judgment.  See Transcript of Hearing at 5:23-6:4 (taken October 28,

---

[2]The Court's citations to the transcripts of the hearings refer to the court reporter's original, unedited versions. Any final transcripts may contain slightly different page and/or line numbers.

2011)(Court, Beach, Lyle)("Oct. 28, 2011 Tr."). The Court inquired whether the municipal liability claims could proceed if there were no underlying constitutional violations. See Oct. 28, 2011 Tr. at 6:7-11 (Court). The Court inquired whether it should dismiss the case without prejudice if no federal claims remained in the case following its decision on some of these dispositive motions. See Oct. 28, 2011 Tr. at 11:3-6 (Court). James agreed that the Court would not have jurisdiction to hear the remaining state law claims if no federal law claims remained. See Oct. 28, 2011 Tr. at 11:6-8 (Lyle). The City Defendants argued that it would be more practical to have this Court hear the remaining state law claims because of the Court's familiarity with the case. See Oct. 28, 2011 Tr. at 12:7-17 (Robles). The Court noted that this case was originally filed in federal court and was not a removed case. See Oct. 28, 2011 Tr. at 12:18-20 (Court). James noted that she would rather be in state court to proceed on the state law claims. See Oct. 28, 2011 Tr. at 13:10-12 (Court, Lyle). The Court asked whether entering judgment on or dismissing all the federal claims against Carter and Brown would also dispose of the municipal policy claims against the City Defendants. See Oct. 28, 2011 Tr. at 17:19-24 (Court). James agreed that disposing of the federal claims against Carter and Brown would also dispose of the municipal policy claims against the City Defendants. See Oct. 28, 2011 Tr. at 17:25 (Lyle). The Court inquired whether the concessions in conjunction with the pending motions for summary judgment and motion to dismiss encompassed all the federal claims in the case. See Oct. 28, 2011 Tr. at 18:2-14 (Court). The parties agreed that these concessions and motions encompassed all the federal claims in the case. See Oct. 28, 2011 Tr. at 18:16-19 (Lyle, Court, Robles).

On November 7, 2011, the Court granted summary judgment on all James' Fourth Amendment excessive force claims against Defendant Josh Brown. See Memorandum Opinion and Order at 1-2 (Doc. 156)("Nov. 7, 2011 MOO"). Additionally, based on previous concessions, the

Court entered summary judgment on all James' claims against Defendant Michael Fox.  See Nov. 7, 2011 MOO at 2.  On November 9, 2011, the Court entered summary judgment on James' following claims: (i) her unlawful entry claims against Carter; (ii) her excessive force claims asserted under a Fourth Amendment theory against Carter; (iii) her excessive force claims asserted under a substantive due-process theory against Carter; and (iv) her Equal Protection Clause claims against Carter and the other Defendants in the case.  See Memorandum Opinion and Order at 1-2 (Doc. 157)("Nov. 9, 2011 MOO").

### RELEVANT LAW REGARDING SUPPLEMENTAL JURISDICTION

It is a fundamental precept of American law that the federal courts are "courts of limited jurisdiction."  Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005).  Federal courts "possess only that power authorized by [the] Constitution and statute."  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  Among the powers that Congress has bestowed upon the courts is the power to hear controversies arising under federal law -- federal question jurisdiction -- and controversies arising between citizens of different states -- diversity jurisdiction.  See 28 U.S.C. §§ 1331-32.

### 1.      Supplemental Jurisdiction.

Although a statutory basis is necessary for federal courts to exercise jurisdiction over a controversy, "it is well established -- in certain classes of cases -- that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy."  Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. at 552.  The Supreme Court of the United States has long subscribed to the concept of supplemental jurisdiction recognized in two common-law doctrines -- pendent and ancillary jurisdiction.  Federal courts may exercise pendent jurisdiction over state-law claims when "state and

-8-

federal claims . . . derive from a common nucleus of operative fact."  United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).  Supplemental jurisdiction gives federal courts the flexibility to hear a cause of action even after the introduction of third parties whose insertion into the litigation is not supported by any independent grounds for federal jurisdiction, when those parties share a common interest in the outcome of the litigation and are logical participants in it.  See Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 375 n.18 (1978).

In 1988, Chief Justice William H. Rehnquist created the Federal Courts Study Committee to analyze the federal court system and to recommend reforms.  See 16 Moore's Federal Practice, § 106.04[5] (Matthew Bender 3d ed.).  In response to the Committee's findings regarding "pendent" and "ancillary" jurisdiction, Congress codified the application of the two doctrines when it passed the Judicial Improvements Act of 1990:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).  In enacting 28 U.S.C. § 1367, Congress conferred upon federal district courts "supplemental forms of jurisdiction . . . [that] enable them to take full advantage of the rules on claim and party joinder to deal economically -- in single rather than multiple litigation -- with matters arising from the same transaction or occurrence."  Report of the Federal Courts Study Committee, Part II.2.B.2.b. (April 2, 1990), reprinted in 22 Conn. L. Rev. 733, 787 (1990).

## 2.    District Court Discretion.

The United States Court of Appeals for the Tenth Circuit has followed the Supreme Court's lead in classifying supplemental jurisdiction, not as a litigant's right, but as a matter of judicial

discretion.  See Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d 1161, 1165 (10th Cir. 2004)(citing City of Chi. v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997)).   In circumstances where the supplemental jurisdiction statute may support supplemental jurisdiction, the district court retains discretion to decline to exercise that jurisdiction.  The traditional analysis, based on the Supreme Court's opinion in United Mine Workers v. Gibbs, compelled courts to consider "judicial economy, convenience and fairness to litigants" when deciding whether to exercise supplemental jurisdiction. 383 U.S. at 726.  Similarly, Congress' supplemental jurisdiction statute enumerates four factors that the court should consider:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  In applying these factors, district courts should seek to exercise supplemental jurisdiction in an effort to "vindicate values of economy, convenience, fairness, and comity."  Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d at 1164.

Numerous courts have acknowledged that 28 U.S.C. § 1367(c) necessarily changed the district courts' supplemental jurisdiction discretion analysis and that, unless one of the conditions of 28 U.S.C. § 1367(c) exists, courts are not free to decline jurisdiction.  See Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 447 (2d Cir. 1998)("Section 1367 has indeed altered Gibbs' discretionary analysis."); McLaurin v. Prater, 30 F.3d 982, 985 (8th Cir. 1994)("The statute plainly allows the district court to reject jurisdiction over supplemental claims only in the four

instances described therein."); <u>Executive Software N. Am. v. U.S. Dist. Court</u>, 24 F.3d 1545, 1557 (9th Cir. 1994)("By codifying preexisting applications of <u>Gibbs</u> in subsections (c)(1)-(3), however, it is clear that Congress intended the exercise of discretion to be triggered by the court's identification of a factual predicate that corresponds to one of the section 1367(c) categories."); <u>Palmer v. Hosp. Auth.</u>, 22 F.3d 1559, 1569 (11th Cir. 1994)("[S]upplemental jurisdiction must be exercised in the absence of any of the four factors of section 1367(c)."); <u>Bonadeo v. Lujan</u>, No. 08-0812, 2009 WL 1324119, at *8 (D.N.M. Apr. 30, 2009)(Browning, J.)("28 U.S.C. § 1367(c) changed the district courts' supplemental jurisdiction discretion analysis to prohibit courts from declining jurisdiction unless one of the conditions of 28 U.S.C. § 1367(c) exists."). At least one other district court in the Tenth Circuit besides this Court has reached the same conclusion. <u>See</u> <u>Gudenkauf v. Stauffer Commc'ns, Inc.</u>, 896 F. Supp. 1082, 1084 (D. Kan. 1995)("[A]ny exercise of discretion declining jurisdiction over pendent claims or parties cannot occur until 'triggered' by the existence of one of the four conditions enumerated."). This Court has stated that, "[i]n circumstances where the supplemental jurisdiction statute may support supplemental jurisdiction, the district court retains discretion to decline to exercise that jurisdiction." <u>Krumm v. Holder</u>, No. 08-1056, 2009 WL 1563381, at *14 (D.N.M. May 27, 2009)(Browning, J.).[3]

## LAW REGARDING 42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights,

---

[3]The Court's decision in <u>Krumm v. Holder</u> does not directly discuss how 28 U.S.C. § 1367(c) affects the district court's discretion, but it cites to <u>Bonadeo v. Lujan</u>, which states that 28 U.S.C. § 1367(c) modified district courts' supplemental jurisdiction discretion. <u>See</u> 2009 WL 1563381, at *14 (citing <u>Bonadeo v. Lujan</u>, 2009 WL 1324119, at *8).

> privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, . . . .

42 U.S.C. § 1983. Section 1983 creates only the right of action; it does not create any substantive rights; substantive rights must come from the Constitution or federal statute. See Spielman v. Hildebrand, 873 F.2d 1377, 1386 (10th Cir. 1989)("Section 1983 does not provide a remedy if federal law does not create enforceable rights."). Rather, 42 U.S.C. § 1983 authorizes an injured person to assert a claim for relief against a person who, acting under color of state law, violated the claimant's federally protected rights. To state a claim upon which relief can be granted under § 1983, a plaintiff must allege: (i) a deprivation of a federal right; and (ii) that the person who deprived the plaintiff of that right acted under color of state law. See West v. Aikins, 487 U.S. 42, 48 (1988). Broken down differently, a plaintiff

> must establish (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a "person" (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia.

Martinez v. Martinez, No. 09-0281, 2010 WL 1608884, at *11 (D.N.M. Mar. 30, 2010)(Browning, J.)(quoting Summum v. City of Ogden, 297 F.3d 995, 1000 (10th Cir. 2002)). Neither the civil-rights statutes nor the Fourteenth Amendment, however, are a license to the federal judiciary to displace state law through the creation of a body of general federal tort law. See Paul v. Davis, 424 U.S. 693, 701 (1976)(Fourteenth Amendment); Griffin v. Breckenridge, 403 U.S. 88, 101-102 (1971)(civil-rights statute).

The Supreme Court has made clear that there is no respondeat superior liability under 42 U.S.C. § 1983. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009)("Because vicarious liability is

inapplicable to <u>Bivens</u>[4] and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); <u>Bd. of County Comm'rs v. Brown</u>, 520 U.S. 397, 403 (1997).  An entity cannot be held liable solely on the basis of the existence of an employer-employee relationship with an alleged tortfeasor.  <u>See</u> <u>Monell v. New York City Dept. of Soc. Servs.</u>, 436 U.S. 658, 689 (1978).  The Tenth Circuit has stated that, "in order to hold a municipality liable for an employee's constitutional violations, a plaintiff must show not only that a constitutional violation occurred, but also that some municipal policy or custom was the moving force behind the violation." <u>Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs</u>, 151 F.3d 1313, 1320 (10th Cir. 1998).  The Tenth Circuit has held that supervisors are not liable under 42 U.S.C. § 1983 "unless there is an affirmative link between the constitutional deprivation and the supervisor's exercise of control or direction, his personal participation, or his failure to supervise." <u>Kiesling v. Troughton</u>, 107 F.3d 880, 1997 WL 111256, at *2 (10th Cir. 1997)(unpublished table decision)(citing <u>Meade v. Grubbs</u>, 841 F.2d 1512, 1527 (10th Cir. 1988)).  Supervisors can be held liable only for their own unconstitutional or illegal policies, and not for the tortious acts of their employees.  Supervisory liability requires a showing that such policies were a "deliberate or conscious choice."  <u>Barney v. Pulsipher</u>, 143 F.3d 1299, 1307-08 (10th Cir. 1998)(citations omitted)(internal quotation marks omitted).  <u>See</u> <u>Bd. of County Comm'rs v. Brown</u>, 502 U.S. at 404 ("[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.  The plaintiff must also demonstrate that, through its <u>deliberate</u> conduct, the municipality was the 'moving force' behind the injury alleged." (emphasis in original)).

---

[4]<u>Bivens v. Six Unknown Named Agents</u>, 403 U.S. 388, 395-397 (1971)(authorizing a federal cause of action for damages under certain constitutional provisions when government officials violate those respective constitutional rights).

The Tenth Circuit has recognized that Ashcroft v. Iqbal limited, and may have even eliminated, supervisory liability for government officials based on an employee's or subordinate's constitutional violations. See Dodds v. Richardson, 614 F.3d 1185 (10th Cir. 2010). The language that may have altered the landscape for supervisory liability in Ashcroft v. Iqbal is as follows: "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." 129 S.Ct. at 1948. The Tenth Circuit in Dodds v. Richardson held:

> Whatever else can be said about Iqbal, and certainly much can be said, we conclude the following basis of § 1983 liability survived it and ultimately resolves this case: § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which "subjects, or causes to be subjected" that plaintiff "to the deprivation of any rights . . . secured by the Constitution . . . ."

Dodds v. Richardson, 614 F.3d at 1199. The Tenth Circuit noted, however, that "Iqbal may very well have abrogated § 1983 supervisory liability as we previously understood it in this circuit in ways we do not need to address to resolve this case." Dodds v. Richardson, 614 F.3d at 1200. It concluded that Ashcroft v. Iqbal did not alter "the Supreme Court's previously enunciated § 1983 causation and personal involvement analysis." Dodds v. Richardson, 614 F.3d at 1200. More specifically, the Tenth Circuit recognized that there must be "an 'affirmative' link . . . between the unconstitutional acts by their subordinates and their 'adoption of any plan or policy . . . -- express or otherwise -- showing their authorization or approval of such misconduct." Dodds v. Richardson, 614 F.3d at 1200-01 (second omission in original). The specific example that the Tenth Circuit gave to apply this principle was from Rizzo v. Goode, 423 U.S. 362 (1976), where the plaintiff sought to hold a mayor, police commissioner, and other city officials liable under 42 U.S.C. § 1983 for constitutional violations that unnamed individual police officers committed. See Dodds v.

Richardson, 614 F.3d at 1200 (quoting Rizzo v. Goode, 423 U.S. at 371).  The Tenth Circuit noted that the Supreme Court in that case found a sufficient link between the police misconduct and the city officials' conduct, because there was a deliberate plan by some of the named defendants to "crush the nascent labor organizations." Dodds v. Richardson, 614 F.3d at 1200 (quoting Rizzo v. Goode, 423 U.S. at 371).

Liability can extend to a municipality for failure to train and for "official de facto policies" that arise from "failing to adopt various policies to adequately protect" a class of persons.  Barney v. Pulsipher, 143 F.3d at 1309 & n.8.  "[W]hen the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm," it is liable.  Barney v. Pulsipher, 143 F.3d at 1307.

> In a "narrow range of circumstances," however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a "highly predictable" or "plainly obvious" consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.

Barney v. Pulsipher, 143 F.3d at 1307-08; Williams ex rel. Hart v. Paint Valley Local Sch. Dist., 400 F.3d 360, 369 (6th Cir. 2005)("The evidence must show that the need to act is so obvious that the School Board's 'conscious' decision not to act can be said to amount to a 'policy' of deliberate indifference to Doe's constitutional rights." (emphasis omitted)).  Most cases, however, will not fall within this "narrow range of circumstances" without "a pattern of violations."  Barney v. Pulsipher, 143 F.3d at 1308.

## ANALYSIS

Because James does not oppose the Court dismissing with prejudice the following claims,

the Court will dismiss with prejudice James': (i) excessive force claims asserted under a Fourteenth Amendment theory against the Individually Named Defendants -- other than Carter; (ii) official capacity claims against the Individually Named Defendants; and (iii) the 42 U.S.C. § 1983 claim against the APD.  Because the Court has already concluded that none of the Individually Named Defendants have committed any constitutional violations, the Court will enter summary judgment on James' remaining municipal policy claims against the City Defendants asserted under a supervisory liability theory -- Count I.  James has conceded that no municipal policy claims would remain against the City Defendants if the Court disposed of the federal claims against Carter and Brown.  After entering summary judgment on and dismissing these federal claims, no federal claims remain in this case.  The Court has already disposed of the other federal claims in this case in its previous Memorandum Opinions and Orders.  See Nov. 7, 2011 MOO at 1-2; Nov. 9, 2011 MOO at 1-2.  Consequently, the Court will decline to exercise supplemental jurisdiction over the remaining state law claims and will dismiss the remaining state law claims without prejudice.

I.      **JAMES HAS AGREED TO DISMISSAL OF THE CLAIMS, OTHER THAN THE STATE LAW CLAIMS, ADDRESSED IN THE MOTION TO DISMISS.**

Because James does not oppose the Court dismissing with prejudice the following claims, the Court will dismiss with prejudice James': (i) excessive force claims asserted under a Fourteenth Amendment theory against the Individually Named Defendants -- other than Defendant Russell Carter; (ii) official capacity claims against the Individually Named Defendants; and (iii) the 42 U.S.C. § 1983 claim against the APD.  The Court notes that it has entered summary judgment on the following claims against Carter in a separate memorandum Opinion and Order: (i) the excessive force claims asserted under a Fourth Amendment theory; (ii) the excessive force claims asserted under a substantive due-process theory; and (iii) the unlawful entry claims.  See Nov. 9, 2011 MOO

-16-

at 1-2.  Based on its decision to not exercise supplemental jurisdiction over remaining state law claims in this case, the Court will not address the state law claims that the Motion to Dismiss discusses.

## II.   JAMES HAS AGREED THAT, IF NO FEDERAL CLAIMS REMAIN AGAINST CARTER OR BROWN, ENTERING SUMMARY JUDGMENT ON THE MUNICIPAL POLICY CLAIMS IS PROPER.

"[I]n order to hold a municipality liable for an employee's constitutional violations, a plaintiff must show not only that a constitutional violation occurred, but also that some municipal policy or custom was the moving force behind the violation." Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs, 151 F.3d at 1320.  At the October 28, 2011 hearing, James agreed that disposing of those federal claims against Carter and Brown would also dispose of the municipal policy claims against the City Defendants. See Oct. 28, 2011 Tr. at 17:25 (Lyle).  The Court will enter summary judgment on James' remaining municipal policy claims against the City Defendants asserted under a supervisory liability theory -- Count I.  This agreement at the hearing, the other concessions in this case, and the Court's prior conclusion that none of the Individually Named Defendants -- specifically Carter and Brown -- have committed any constitutional violations, justify the Court entering summary judgment on these municipal policy claims.

While it is not necessary to address this issue given James' agreement and concessions, the Court notes that James has not timely responded to the Motion for Summary Judgment related to the municipal policy claims.  D.N.M.LR-Civ. 7.1(b) provides: "The failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion."  D.N.M.LR-Civ. 7.1(b).  Assuming James' rule 56(d) affidavit was adequate to justify a delay in her response to the Motion for Summary Judgment, James requested only thirty additional days to respond to the Motion for Summary Judgment after she received the

City Defendants' discovery responses.  At the October 4, 2011 hearing, James stated that she had already received the City Defendants' discovery responses before the date of that hearing.  See Oct. 4, 2011 Tr. at 3:22-4:12 (Lyle).  More than thirty days have passed since October 4, 2011, and James has not filed a supplemental response to the Motion for Summary Judgment.  Consequently, the Court will deem James' failure to file a supplemental response as consent to granting the Motion for Summary Judgment.

## III.    THE COURT WILL DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE REMAINING STATE LAW CLAIMS IN THE CASE.

Based on the concessions in this case related to the Motion to Dismiss, the Court's granting of the three motions for summary judgment in this case, and other concessions that related to disposing of federal claims, no federal claims now remain in this case.  At the October 28, 2011 hearing, the parties agreed that the concessions in the case and all the pending dispositive motions addressed all the federal claims in the case.  See Oct. 28, 2011 Tr. at 18:16-19 (Lyle, Court, Robles).

28 U.S.C. § 1367(c)(3) provides: "The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).  The Tenth Circuit reviews a district court's decision not to exercise jurisdiction under 28 U.S.C. § 1367(c) for abuse of discretion.  See Nielander v. Bd. of Cnty. Comm'rs, 582 F.3d 1155, 1172 (10th Cir. 2009).  The Tenth Circuit has held: "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."  Koch v. City of Del City, No. 10-6105, 2011 WL 5176164, at *14 (10th Cir. Nov. 2, 2011)(quoting Smith v. City of Enid ex rel. Enid City Comm'n, 149 F.3d 1151, 1156 (10th Cir. 1998)).  The Supreme Court has also recognized:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of

> applicable law.  Certainly, if the federal claims are dismissed before trial, even
> though not insubstantial in a jurisdictional sense, the state claims should be
> dismissed as well.

United Mine Workers of Amer. v. Gibbs, 383 U.S. 715, 726 (1966).  This Court has previously

stated that a district court should usually decline to exercise supplemental jurisdiction when 28

U.S.C. § 1367(c) applies.  See Armijo v. New Mexico, No. 08-0336, 2009 WL 3672828, at *4

(D.N.M. Sept. 30, 2009)(Browning, J.)("The Supreme Court and the Tenth Circuit have not only

acknowledged such a result, they have encouraged it.").  Additionally, the Tenth Circuit has

recognized that a district court does not commit an "abuse of discretion" when it declines to exercise

supplemental jurisdiction over a claim "under 28 U.S.C. § 1367(c)(3) . . . where it 'has dismissed

all claims over which it has original jurisdiction[.]'"  Muller v. Culbertson, 408 F.App'x 194, 197

(10th Cir. 2011)(unpublished).

        The Court concludes that dismissal of the remaining state law claims without prejudice is

proper in this case.  The Court has reviewed whether any federal claims remain in the case.  It has

concluded that the concessions in the case and the holdings the Court has made in this Memorandum

Opinion and Order and previous Memorandum Opinions and Orders have resulted in dismissal or

entering summary judgment on all the federal claims in the case.  See Nov. 7, 2011 MOO at 1-2;

Nov. 9, 2011 MOO at 1-2.  At the October 28, 2011 hearing, the parties agreed that the concessions

in the case and all the pending dispositive motions addressed all the federal claims in the case.  See

Oct. 28, 2011 Tr. at 18:16-19 (Lyle, Court, Robles).  Given the Tenth Circuit's guidance that

"[w]hen all federal claims have been dismissed, the court may, and usually should, decline to

exercise jurisdiction over any remaining state claims," the Court concludes that dismissing the

remaining state law claims without prejudice is the appropriate resolution of this matter.  Koch v.

City of Del City, 2011 WL 5176164, at *14 (quoting Smith v. City of Enid ex rel. Enid City

Comm'n, 149 F.3d at 1156.  Additionally, the parties have argued that the Court could exercise diversity jurisdiction over these state law claims.  The Civil Cover Sheet filed along with James' original pleadings indicates that the only basis on which she has argued this Court can exercise subject-matter jurisdiction over this case is under federal-question jurisdiction.  See Civil Cover Sheet at 1, filed June 2, 2009 (Doc. 1-1).  Furthermore, this Civil Cover Sheet establishes that this case was originally filed in federal court and was not removed, which gives rise to a situation where the Court should dismiss the remaining state law claims without prejudice as it cannot remand the case to state court.  See Civil Cover Sheet at 1.  Finally, James has stated that she prefers to litigate her state law claims in state court, and, to the extent possible, the plaintiff should be the master of her choice of forum.

IT IS ORDERED that the City Defendants' Motion to Dismiss No. I: Dismissal of Plaintiffs' Fourth Amendment Excessive Force Claims, Official Capacity Claims Against the Individually Named Defendants, § 1983 Claims Against the Albuquerque Police Department, and State Law Negligence Claims, filed August 16, 2011 (Doc. 102), is granted in part.  The Court will grant the City Defendants' Motion for Partial Summary Judgment No. III: Dismissal of Plaintiffs' Municipal Liability (Policies, Customs, Patterns, and Practices), Failure to Train, and Supervisory Liability Claims, filed August 16, 2011 (Doc. 105).  The Court will dismiss with prejudice James': (i) excessive force claims asserted under a Fourteenth Amendment theory against the Individually Named Defendants[5] -- other than Defendant Russell Carter; (ii) official capacity claims against the Individually Named Defendants; and (iii) the 42 U.S.C. § 1983 claim against the Albuquerque Police Department.  The Court will enter summary judgment on James' remaining municipal policy

_____

    [5]The Individually Named Defendants include Defendants: (i) Martin J. Chavez, III; (ii) Ray Shultz; (iii) Russell Carter; (iv) Michael Fox; and (v) Josh Brown.

claims against the City Defendants asserted under a supervisory liability theory -- Count I.  After

entering summary judgment on and dismissing these federal claims, no federal claims remain in this

case.  Consequently, the Court will decline to exercise supplemental jurisdiction over the remaining

state law claims and will dismiss the remaining state law claims without prejudice.


_____
UNITED STATES DISTRICT JUDGE


James P. Lyle
Law Offices of James P. Lyle P.C.
Albuquerque, New Mexico

 *Attorney for the Plaintiff*

Kathryn Levy
City of Albuquerque Legal Department
Albuquerque, New Mexico

 *Attorneys for Defendants Martin Chavez, III, Ray Schultz, and the City of Albuquerque*

Adam H. Greenwood
Douglas E. Gardner
Terri S. Beach
Luis E. Robles
Robles, Rael & Anaya
Albuquerque, New Mexico

 *Attorneys for Defendants Russell Carter, Michael Fox, and Josh Brown*